UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

STEVE HOBART ET AL.,           §
                               §
        Plaintiffs,            §
                               §
v.                             §      CIVIL ACTION NO. 4:09-cv-3332
                               §
CITY OF STAFFORD ET AL.,       §
                               §
        Defendants.            §

<u>MEMORANDUM AND ORDER</u>

Pending before the Court is Defendants' Motion to Dismiss (Doc. No. 7).  After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that Defendants' motion to dismiss should be granted in part and denied in part.

## I.    BACKGROUND

This lawsuit arises from the death of Aaron Hobart ("Aaron"), son of Plaintiffs Steve and Pam Hobart (individually, "Mr. Hobart" or "Ms. Hobart"; collectively, "Hobarts" or "Plaintiffs").  Aaron suffered from mental health problems and, at the time of the incident, had been tapering off of his medications.  (Compl. ¶ 14.)  On February 18, 2009, Aaron experienced several mental distress.  His mother Pam became concerned and contacted Aaron's treating psychiatrist, Dr. Moreland, who advised her to call 911 and request assistance from a Crisis Intervention Team ("CIT").  CIT officers have special training in handling individuals with mental illnesses.  (*Id.*)

Ms. Hobart called 911, and was connected to the Stafford Police Department ("SPD").  She explained that Aaron needed transportation to a hospital and medication.

Ms. Hobart specifically requested a CIT officer, and also explained that Aaron did not have a weapon and was not under the influence of any drug. (*Id.* ¶ 15.) Emergency services relayed to Ms. Hobart that the responder would be able to help transport Aaron to a hospital, and that the procedure would be explained to Ms. Hobart when responders arrived. (*Id.*)

Rather than sending someone specialized in CIT, however, SPD sent Patrol Officer Jesus Estrada ("Officer Estrada") to the Hobarts' home. (*Id.* ¶ 16.) Ms. Hobart invited Officer Estrada into the home. (*Id.*) Upon seeing and hearing Officer Estrada, Aaron became more distraught and tried to leave the home. Aaron tried to pass Officer Estrada on his way out, causing physical contact between the two. Ms. Hobart yelled at the two to stop any confrontation, and tried to step in between the two. (*Id.* ¶¶ 16-17.)

Officer Estrada drew his firearm. Ms. Hobart continued to shout at Aaron and Officer Estrada. Officer Estrada then shot Aaron in his right hip. Aaron collapsed, and landed face down on the floor. Officer Estrada proceeded to fire more shots into Aaron, firing the last bullet into Aaron's neck. In all, Estrada struck Aaron with five of the six shots he fired. The last bullet proved to be fatal. (*Id.* ¶¶ 17-18.)

Mr. Hobart entered the hallway as Officer Estrada fired his last shot. He rushed to Aaron, applied pressure to the fatal neck wound, and attempted resuscitation. A second officer then arrived at the scene and assisted Mr. Hobart with the resuscitation. The attempts failed, and Aaron died.

This lawsuit followed. Now, Defendants move to dismiss on grounds of failure to state a claim. The Court takes up each of Defendants' arguments in turn.

## II.   LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004); *see also Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th

Cir. 2000).  Furthermore, a Court may refer to matters of public record when deciding a motion to dismiss.  *Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 595 (5th Cir. 2000).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff.  The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth.  *Iqbal*, 129 S. Ct. at 1950 (citation omitted).  The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'"  *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).  Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

Additionally, "when a plaintiff sues a public official under [Section] 1983, the district court must insist on heightened pleading by the plaintiff."  *Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996) (citing *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)).  In such cases, the pleadings "must 'state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity.'"  *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (quoting *Elliott v. Perez*, 751 F.2d 1472, 1473 (5th Cir. 1985)).

### III.  ANALYSIS

#### A.  Fourth Amendment Excessive Force Claim

Defendants argue that the Hobarts fail to allege facts showing a claim under the Fourth Amendment. They contend that the relevant inquiry—which requires a court to consider the objective reasonableness of an officer's actions from the perspective of a reasonable police officer on the scene—shows that Officer Estrada behaved reasonably in his decision to open fire in the Hobart household "because he could reasonably have believed firing was necessary under the totality of the factual circumstances alleged by the Plaintiffs." (Defs.' Mot. to Dismiss, Doc. No. 7, ¶ 13.) Plaintiffs dispute this characterization, arguing that they plead adequate facts to show that the force used by Officer Estrada was excessive. (Pls.' Resp. to Defs.' Mot. to Dismiss for Failure to State a Claim, Official Immunity, and Governmental Immunity, Doc. No. 10, at 4-6.)

To prevail on a Fourth Amendment excessive force claim, a plaintiff must show "'(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)). "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Id.* (citing *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)). Further, "'[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1979) (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). Here, of course, it is not the task of this Court to determine whether Officer Estrada actually applied excessive force in the death of Aaron Hobart, but instead to determine whether the Hobarts have adequately pled an excessive

force claim against Officer Estrada. The Court finds that the Hobarts have adequately pled their claim. First, the Hobarts' pleading has clearly alleged an injury—the death of their son. Second, the Hobarts have proffered well-pleaded facts alleging that Officer Estrada's use of force was clearly and unreasonably excessive. The Hobarts allege that Pam Hobart called 911 and told the dispatcher that Aaron was unarmed and not under the influence of any drug. (Compl. ¶ 15.) Mrs. Hobart was calling not because any crime was being committed, but rather to request that a CIT officer transport Aaron to the hospital for treatment. (*Id.*) Mrs. Hobart specifically relayed to the 911 dispatcher that Aaron was mentally ill. (*Id.* ¶ 16.) The Hobarts further allege that Estrada responded to the call in order to provide the assistance requested, and not to investigate a crime. (*Id.* ¶ 15.) During the confrontation itself, the Hobarts allege that Aaron became distraught and tried to leave the home upon seeing Officer Estrada. He tried to pass Officer Estrada and caused physical contact with him. (*Id.* ¶ 17.) The Hobarts allege, however, that Aaron's actions in no way suggested that he was reaching for a weapon or confronting Officer Estrada. (*Id.* ¶ 18.)

Viewing these facts in the light most favorable to the Hobarts, the Court concludes that they have sufficiently stated an excessive force claim under Rule 12(b)(6).

### B. Fourteenth Amendment Excessive Force Claim

In their Complaint, the Hobarts plead an excessive force claim under both the First and Fourteenth Amendments. (Compl. ¶ 26.) Defendants move to dismiss the Hobarts' Fourteenth Amendment claim, arguing that the Supreme Court has expressly rejected the courts' use of the Fourteenth Amendment's substantive due process clause

under these circumstances because the Fourth Amendment provides an explicit source of protection and should be used instead.

The Court agrees. All claims that "law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness standard, rather than under a 'substantive due process' approach.'" *Graham v. Connor*, 490 U.S. 386, 395, (U.S. 1989). In this case, the Fourth Amendment would apply only where Aaron Hobart was "seized" as a free citizen, since Officer Estrada was not effecting an arrest or investigatory stop at the time of Aaron's shooting. A person is "seized" within the meaning of the Fourth Amendment when a reasonable person would not feel free to leave. *See Florida v. Bostick*, 501 U.S. 429, 435 (1991). Here, both parties appear to agree that the Fourth Amendment's reasonableness inquiry applies here, even though they have not discussed in detail whether Aaron Hobart was seized within the meaning of that Amendment. The Court determines that, because Officer Estrada displayed his weapon to Aaron, the encounter is properly described as a "seizure" and the Fourth Amendment reasonableness standard should apply. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (noting the display of a weapon by an officer as an example of circumstances that might indicate a seizure). The Hobarts' Fourteenth Amendment excessive force claim is therefore dismissed.

### C. Claims Against Chief of Police Bonny Krahn

The Complaint lists five causes of action against Chief of Police Bonny Krahn ("Chief Krahn"). Defendants seek dismissal of all claims against Chief Krahn, arguing that Chief Krahn had no personal involvement in any alleged unconstitutional conduct,

and that the Hobarts fail to allege any facts which demonstrate a pattern of similar violations arising from inadequate training. (Doc. No. 7, ¶¶ 16-20.) The Hobarts respond that they state a claim against Chief Krahn because he failed to train SPD personnel and supervise Estrada, his failure caused Estrada to use unreasonable excessive force, and his failure was deliberately indifferent to the Hobarts' rights. (Doc. No. 10, at 6-11.)

Under Section 1983, supervisory officials are not liable for the actions of subordinates on a theory of vicarious liability. *Thompson v. Upshur County*, 245 F.3d 4447, 459 (5th Cir. 2001) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). Instead, the "misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor." *Southard v. Tex. Bd. Of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th cir. 1994) (en banc)). Supervisory liability may attach only if a supervisory official affirmatively participates in an act that violates the constitution, or implements an unconstitutional policy that causes the plaintiff's injury. *Baker v. Putnal*, 75 F.3d 190 199 (5th Cir. 1996) (citing *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992)). In this case, the Hobarts do not allege that Chief Krahn was personally involved in the death of Aaron Hobart. Instead, they sue Chief Krahn under the theory that he failed to supervise Officer Estrada and failed to train SPD personnel to respond properly to mental health service calls. Under this theory, to establish Section 1983 liability against Chief Krahn, the Hobarts must establish that: "(1) the police chief failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights." *Roberts v. City of Shreveport*, 397

F.3d 287, 291-92 (5th Cir. 2005) (citations omitted). Proof of a pattern of similar constitutional violations is generally required to establish deliberate indifference. *Id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998)).

Here, the Hobarts allege that Chief Krahn failed to train Officer Estrada in CIT methods, and they therefore meet the first prong of supervisory liability. They further allege that Chief Krahn failed to train SPD personnel in the proper communication of crisis intervention requests for mentally ill persons, and dispatching appropriate personnel to the scene. Second, the Hobarts also state throughout their complaint that a causal connection existed between Officer Estrada's lack of training and Aaron Hobart's death. They allege that various de-escalation and non-lethal defense measures exist to appropriately manage and detain persons with mental impairments. They also allege that the situation called for a CIT-trained officer, which SPD did not provide. The third prong requires that Chief Krahn's failure to train constituted deliberate indifference to the Hobarts' constitutional rights. To prevail on this prong, a plaintiff must provide evidence of a pattern of constitutional violations. Here, the Hobarts do not allege any facts showing a pattern of constitutional violations. The Court notes that virtually all of the case law cited by Defendants in support of dismissal of this claim comes from cases at the summary judgment phase, where most of the law on this subject appears to have developed. Because this case is now at the motion to dismiss phase, the Court further acknowledges that providing proof of a pattern of constitutional violations is exceedingly difficult for a plaintiff, who has no source of pre-discovery evidence that he may produce to support such a claim. After its review of the relevant cases, however, this Court concludes that the Hobarts must set forth at least *some* facts that allege a pattern of

unconstitutional conduct by SPD. *See, e.g., Oporto v. City of El Paso*, 2010 WL 3503457, at *8 (W.D. Tex. Sept. 2, 2010) (refusing to dismiss a failure-to-train claim where Plaintiffs provided a list of thirty-two prior incidents of officers allegedly using excessive deadly force); *Greenwood v. City of Yoakum*, 2008 WL 4615779, at *4 (S.D. Tex. Oct. 17, 2008) (refusing to dismiss a failure-to-train claim where plaintiff reported that he had been wrongfully mistreated by officers in the past); *Sagan v. Sumner County Bd. of Educ.*, --- F. Supp. 2d ---, 2010 WL 2696169, at *16 (M.D. Tenn. July 6, 2010) (refusing to dismiss a failure-to-train claim where plaintiff alleged that abuse by teacher had occurred numerous times over the course of more than one academic year); *LaFond v. City of Kankakee*, 2010 WL 503009, at *5 (C.D. Ill. Feb. 8, 2010) ("In the absence of any allegations of previous incidents, [a single incident] is insufficient to allege that [defendant] was deliberately indifferent to potential constitutional violations."). The Court believes, at this juncture, that even general facts which point to prior violations by SPD would allow the Hobarts to survive the motion to dismiss phase. The Hobarts fail, however, to allege any facts regarding prior violations. The Court will allow the Hobarts leave to amend their complaint to address this deficiency.[1]

## D. Qualified Immunity

---

[1] Alternatively, under certain circumstances, Section 1983 liability can attach under the "single incident exception," which does not require a pattern of constitutional violations. This exception applies "'where the facts giving rise to the violation are such that it should have been apparent to the policy maker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train.'" *Ramirez v. Jim Wells Cnty.*, 2010 WL 2598304, at *1 (S.D. Tex. June 25, 2010). A plaintiff must also show that the failure to train represented the moving force behind the constitutional violation. *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005). The exception is narrow. The facts, as alleged here, do not state a facially plausible claim under the single incident exception. The Court will allow the Hobarts to replead their claim under the single incident exception as well, if they wish. They must allege some facts regarding the "highly predictable" consequence of a failure to train resulting in this specific injury, and that Chief Krahn's failure to train was the "moving force" behind the constitutional violation. *Id.* (internal quotations omitted).

Defendants argue next that the Hobarts fail to allege facts which overcome the individual defendants' qualified immunity for two reasons. First, Defendants contend that the Hobarts do not show that Officer Estrada and Chief Krahn deprived them of a clearly established right of which a reasonable official would have known. Second, Defendants contend that the Hobarts do they show that Officer Estrada or Chief Krahn were objectively unreasonable in light of the information each official possessed. (Doc. No. 8, at 10-13.)

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)). In examining whether an official is entitled to qualified immunity, a court "conduct[s] the two-step analysis" outlined in *Saucier v. Katz*. *Lytle v. Bexar County*, 560 F.3d 404, 409 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). *Saucier* maintained a "rigid 'order of battle,'" *id.* at 409, whereby qualified immunity was to be determined by examining first, whether the facts alleged show that an official violated a constitutional right, and second, whether that constitutional right was clearly established at the time of the violation. 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, ---U.S. ---, 129 S. Ct. 808 (2009). After the Supreme Court's decision in *Pearson v. Callahan*, a court need not address these two questions in that particular order. 129 S. Ct. at 818.

When a defendant properly asserts a defense of qualified immunity, the burden falls to the plaintiff to "'demonstrate the inapplicability of the defense.'" *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (quoting *McClenson v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)).

A plaintiff is not required to anticipate the defense of qualified immunity and "'provide greater specificity'" in a complaint. *Ellis v. Crawford*, 2005 WL 525406, at *4 (N.D. Tex. Mar. 3, 2005) (quoting *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995) (per curiam)). Instead, a plaintiff is obligated to file initially a "'short and plain statement'" of the claim pursuant to Rule 8(a)(2). *Id.* After a defendant answers with a qualified immunity defense, a court "may, in its discretion, insist that a plaintiff file a reply" pursuant to Rule 7(a) that addresses the qualified immunity question. *Schultea v. Wood*, 47 F.3d 1427, 1433-34 (5th Cir. 1995). This reply "must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Id.* at 1433. A defense pleaded with particularity, then, will require particularity from the plaintiff's Rule 7(a) reply. *Id.*

In this case, the Court has not requested a Rule 7(a) reply from the Hobarts. If Plaintiffs fail to allege facts which overcome qualified immunity, this Court will allow them to amend their complaint to cure those deficiencies.

The Court's first task is to determine whether Plaintiffs have alleged the violation of a constitutional right. We begin with Officer Estrada. The Hobarts allege that Officer Estrada used excessive force in fatally shooting Aaron Hobart. As noted above, all claims that law enforcement officers have used "excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v.*

*Connor*, 490 U.S. 386, 395 (1989).  To state a Fourth Amendment excessive force claim, the Hobarts must allege "'(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'"  *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)).  The Hobarts allege that Officer Estrada fatally shot Aaron Hobart when responding to the Hobarts' request for assistance.  Whether the Hobarts have alleged an excessive force claim here depends on whether or not they have pled a facially plausible claim that Officer Estrada's deadly force was objectively unreasonable under the circumstances.  *See Banks v. Gammon*, 2010 WL 996743, at *5 (N.D. Tex. Jan. 26, 2010).  "Objective reasonableness is 'a pure question of law' that is considered after determining the relevant facts."  *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007)).  To make this determination, courts "'must balance the amount of force used against the need for force.'"  *Id.* (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008)).  Striking this balance "'require careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  *Id.* (quoting *Graham*, 490 U.S. at 396).  The balancing test is "constrained" in a case involving deadly force.  "Use of deadly force is objectively unreasonable unless necessary to prevent serious harm to the officer or others."  *Id.* (citations omitted).  A court must keep in mind, at all times, that police officers often make split-second judgments under uncertain circumstances, and should view an officer's conduct without the benefit of hindsight.

Here, the Hobarts allege that Aaron became agitated upon Officer Estrada's arrival, and he attempted to leave the house. The Hobarts further allege that Aaron had no weapons, a fact that was communicated to the emergency dispatcher during Pam Hobart's phone call. Although Aaron caused physical contact with Officer Estrada while attempting to walk past him and out the door, the Hobarts allege that the two stepped back from each other right away and Aaron's actions in no way suggested that he was reaching for a weapon or otherwise confronting Officer Estrada. From the Court's reading of the Hobart's complaint, the only basis for a reasonable belief that Aaron posed a threat of harm is the physical contact and Aaron's attempt to leave the house. Considering only the pleadings and accepting the Hobarts' factual allegations as true, as this Court must, the Court finds that the Hobarts have stated a claim that Officer Estrada's use of deadly force was excessive and unreasonable under the circumstances. According to the complaint, Aaron Hobart made contact just once and stepped back. He did not fail to comply with an order given by Officer Estrada, or appear to be reaching for a weapon. Although he initially attempted to leave, he did not actually leave the house or flee. Moreover, Aaron Hobart was not a criminal suspect in *any way* and so Officer Estrada could not believe him to be dangerous on those grounds. The Hobarts have stated a facially plausible claim for the violation of a constitutional right.

Next, the Court must consider whether the violation of Aaron Hobart's Fourth Amendment rights was objectively unreasonable given the clearly established law at the time of his death. This is a separate inquiry from the Fourth Amendment reasonableness determination. The focus is on the "'specific circumstances of the incident—could an officer have reasonably interpreted the law to conclude that the perceived threat posed by

the suspect was sufficient to justify deadly force?'" *Banks*, 2010 WL 996743, at *6 (quoting *Ontiveros*, 564 F.3d at 383 n.1).  For the purposes of the qualified immunity analysis, "'clearly established' means that the 'contours of the right' are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  The law generally should be established in a more particularized sense, because the primary concern is fair notice to the officer in the specific context in which he is acting.  *Id.* (citations omitted).  When qualified immunity is raised in a motion to dismiss, it is the defendant's conduct as outlined in the pleadings that is examined for objective reasonableness.  *Id.* at *7 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

In 2009, when Aaron Hobart's shooting death occurred, it was clearly established that "'deadly force violates the Fourth Amendment unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'"  *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 488 (5th Cir. 2001) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).  The threat of physical harm must be immediate.  *Garner*, 471 U.S. at 11.  Accepting the complaint's well-pleaded facts as true and viewing them in the light most favorable to the Hobarts, Aaron did not pose an immediate threat to Officer Estrada or to others.  As alleged in the complaint, Aaron bumped into Officer Estrada once and stepped back, and Officer Estrada immediately drew his gun and opened fire.  The Hobarts' pleadings sufficiently allege that Officer Estrada's use of deadly force was objectively unreasonable in light of clearly established law so as to overcome Officer Estrada's qualified immunity defense at this stage.

As to Chief Krahn, the Hobarts fail to allege the violation of a constitutional right with respect to his supervisory liability. This is outlined in more detail above. Because Hobarts have failed to make this showing, the Court need not turn to the second prong of the qualified immunity analysis. The Court will allow the Hobarts leave to amend their complaint to attempt to cure this deficiency.

### D. Municipal Liability

Defendants argue next that the Hobarts fail to allege facts which support a claim against the City of Stafford. A local government may be sued under Section 1983 "'if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulations, or decision officially adopted and promulgated by that body's officers." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). Municipal liability may also attach where the constitutional violation occurs pursuant to a governmental custom that has not received formal approval. *Id.* (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). To establish municipal liability, a plaintiff must prove three elements: a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom. *Id.* (quotations omitted).

On the first element, the Hobarts adequately plead that Chief Krahn is an official policymaker for the City of Stafford.

On the second element, Plaintiffs point to no official policy promulgated by the municipality. In the alternative, the Hobarts may allege a "custom or policy" by demonstrating a "'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and

well settled as to constitute a custom that fairly represents municipal policy.'" *Id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).   Because the Court is aware of no official policy at fault in this case, it will consider the Hobarts' claims under the second form of policy.

The Hobarts may "prove the existence of a 'custom or policy' in one of two ways." *Id.* at 169.   First, they may establish that municipal actors or employees engaged in a pattern of unconstitutional conduct.   Second, they may establish that a final policymaker took a single unconstitutional action. *Id.* (citations omitted).

The Hobarts fail to allege a pattern of unconstitutional conduct here.   They have identified no other instances of violations resulting from police officers' conduct toward mentally ill persons.   As for a single unconstitutional action by a final policymaker, the Hobarts must plead that Chief Krahn is a final policymaker, and must also show that he has violated a constitutional right.   They have done neither.   As noted above, the Hobarts do not allege facts showing that Chief Krahn is liable under Section 1983.

For this reason, the Hobarts' complaint also fails to state a claim against the City of Stafford on the separate theory that the City had a policy of inadequate training of its police officers. *See Zarnow*, 614 F.3d at 170.   Once again, the Hobarts do not allege that the municipality was deliberately indifferent in adopting its training policy.

The Court allows the Hobarts leave to amend their complaint to state a claim against the City of Stafford.

### E.  The ADA and Rehabilitation Act

Defendants move to dismiss the Hobarts' claims under Title II of the ADA and Section 504 of the Rehabilitation Act, arguing that the Fifth Circuit's case law prohibits such claims under these circumstances.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "A 'public entity' includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2010) (quoting 42 U.S.C. § 12131(1)(B)). The language of Title II tracks the language of Section 504 of the Rehabilitation Act of 1973, *id.* (citations omitted), and "specifically provides that '[t]he remedies, procedures and rights' available under Section 504 shall be the same as those available under Title II." *Id.* (quoting 42 U.S.C. § 12133). A disabled plaintiff can succeed in a Title II claim if he can show that, "by reason of his disability, he was either 'excluded from participation in or denied the benefits of the services, programs, or activities of a public entity,' or was otherwise 'subjected to discrimination by any such entity.'" *Id.* (quoting 42 U.S.C. § 12132).

Here, the parties do not dispute that Aaron Hobart was a disabled person or that the City of Stafford is a public entity. The Hobarts allege numerous violations of Title II and Section 504, including: "a failure and refusal to accommodate police department operations for mental health service calls, a failure and refusal to adopt a policy to protect persons with mental illnesses, discrimination in the provision of police services and emergency responses, and a failure to conduct a self-evaluation plan for programs and

services affecting persons with mental illnesses." (Doc. No. 10, at 12.) Defendants appear not to contest Hobarts' first, second, and fourth theories of recovery. In its motion, Defendants argue against Title II relief only insofar as it relates to the incident itself. From the Court's review of the pleadings and Defendants' motion, the third claim is the only one that refers directly to the incident leading to Aaron's death. The other claims pertain only to the City's policies both before and after Aaron's death. The Court therefore will not consider the Hobarts' first, second, and fourth theories of recovery for the purposes of this motion to dismiss. Those claims may go forward.

Courts of appeals have addressed the applicability of Title II to arrests in a variety of contexts. They have identified two categories for these claims. The first basis is a "wrongful arrest" theory "under which the police wrongly arrest an individual with a disability because the police misperceived the effects of his or her disability as criminal activity." *Morais v. City of Philadelphia*, 2007 WL 853811, at *11 (E.D. Pa. Mar. 19, 2007) (citing *Lewis v. Truitt*, 960 F. Supp. 175, 176-78 (S.D. Ind. 1997)). The second category is the "reasonable accommodation" theory "under which the police properly investigate and arrest a person with a disability for a crime unrelated to that disability, but fail to reasonably accommodate the disabled person's disability in the course of investigation or arrest, 'causing the person to suffer greater injury or indignity in that process than other arrestees.'" *Id.* (citing *Gohier v. Enright*, 186 F.3d 1216, 1220 (10th Cir. 1999)). Here, Officer Estrada appears to have used force in response to some behavior of Aaron Hobart's that was related to his disability. This is undoubtedly not an arrest situation, and so this Court will consider this case under the "reasonable accommodation" category. Under this category, the Hobarts' argument is that Officer

Estrada overreacted to Aaron Hobart's conduct, which was a symptom of his mental illness. One potential accommodation here, as in *Morais*, would be for the police to "refrain from taking aggressive action against [Hobart] until he presented an immediate threat to human life." *Id.*

Defendants argue that the Hobart's claim is foreclosed by the Fifth Circuit's decision in *Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000). In *Hainze*, the Fifth Circuit held that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life." *Id.* at 801. Although this holding certainly does preclude the filing of Title II suits in many exigent circumstances, at this stage, the Court cannot say that *Hainze* bars relief full stop. The *Hainze* court faced a much different factual record than this Court does in the instant case. First, that court had a fully developed record because the case was on appeal from a summary judgment motion. By contrast, in this case, we consider only the pleadings for the purposes of a motion to dismiss. Second, the record in *Hainze* conclusively established that the plaintiff posed an immediate threat to the officers in that case. The police officers arrived at the scene to find plaintiff holding a knife and standing next to a truck occupied by two unknown persons. He then began moving quickly toward an officer, disobeying his repeated orders to stop. The officer there did not shoot until the plaintiff was within a few feet. The Fifth Circuit determined that the officer's actions "were the result of a quick discretionary decision made in self-defense and for the safety of those at the scene." *Id.* at 801. Under those circumstances,

the Fifth Circuit held, officers were not required to reasonably accommodate a suspect's disability under Title II.

By contrast, the Hobarts' well-pleaded facts establish that Aaron Hobart was not an immediate threat to Officer Estrada or anyone in the vicinity. He was unarmed and nonthreatening. The Fifth Circuit's reasoning therefore does not square neatly with the limited facts available in this case. Furthermore, on the basis of the facts in *Hainze*, the Fifth Circuit repeatedly noted that the plaintiff was not denied benefits of a public entity's services or programs by reason of his disability, but rather by reason of his own life-threatening behavior. Viewing the facts in the Hobarts' favor here, Aaron Hobart displayed no life-threatening behavior. Therefore it is at least plausible that he was denied the benefits of the City's police services by reason of his disability.

For these reasons, at this stage of the litigation, the Court will not dismiss Plaintiff's second Title II/Section 504 claim. All of the Hobarts claims under Title II and Section 504 will go forward.

### F.  State Law Claims

Finally, the Defendants move to dismiss the Hobarts' state law claims against the City of Stafford. The Court finds that the Hobarts' complaint fails as to one section, and therefore declines to address the others.

### 1.  Section 101.021

Defendants argue that Plaintiffs' claims are barred by Section 101.021 of the Texas Civil Practice and Remedies Code. That statute waives governmental immunity in three areas: use of publicly-owned vehicles, premises defects, and injuries arising from conditions or use of property. *Brown v. Montgomery Cnty. Hosp. Dist.*, 905 S.W. 2d 481,

483 (Tex. App.—Beaumont 1995).  This Court notes that the only explicit violation directed at the City is a negligent failure to train and supervise claim.  (Doc. No. 1, ¶ 63.) The City cannot be liable for damages unless the alleged negligence falls under a statutory waiver of immunity.  The Court concludes that the Hobarts fail to indicate, *in their complaint*, how the City has waived its immunity under any of the three waiver categories.  *See Brown*, 902 S.W.2d at 484.  The Court will require the Hobarts to replead this claim to allege sufficient facts that establish a waiver of governmental immunity under the TTCA.

## IV.   CONCLUSION

For the reasons stated in this order, Defendant's Motion to Dismiss (Doc. No. 7) is **GRANTED** in part and **DENIED** in part.  The Hobarts shall file an amended complaint within twenty (20) days that cures the deficiencies identified here.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the _____ day of September, 2010.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE