UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **STEVE HOBART and PAM HOBART,** | § | |
| **individually and as representatives of the** | § | |
| **Estate of Aaron Hobart** | § | |
| **Plaintiffs** | § | |
| **v.** | § | **C. A. No. H-09-3332** |
| | § | |
| **CITY OF STAFFORD, JESUS ESTRADA,** | § | |
| **in his individual capacity, and BONNY** | § | |
| **KRAHN, in his individual capacity and his** | § | |
| **official capacity as Chief of Police for the** | § | |
| **Stafford Police Department** | § | |
| **Defendants** | § | |

## SECOND AMENDED COMPLAINT

Steve and Pam Hobart, individually and as representatives of the estate of their son Aaron Hobart, claim that Defendants caused Aaron's death and violated his rights under  the  United States Constitution, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (Section 504), and the Texas Tort Claims Act (TTCA).

## I. STATEMENT OF THE CASE

1.      On February 18, 2009, Mrs. Hobart called 911 emergency services and specifically asked for a Crisis Intervention Team (CIT) because Aaron was experiencing an acute  mental health crisis. Rather than sending a CIT, the Stafford Police Department (SPD) sent Defendant Jesus Estrada, a police officer who lacked adequate training in mental illnesses.  Estrada was unable to appreciate and accommodate the Hobarts' mental health crisis.

2.      When Estrada arrived at the Hobart home, he fatally shot Aaron Hobart. At the time, Estrada had easy access to several non-lethal alternatives, were such needed. Estrada's conduct, under color of law, was a gross violation of the Hobarts' Fourth Amendment rights to be free from unreasonable search and seizure.

3.      Plaintiffs also complain that Defendants are liable for violating Aaron's rights under Title II of the ADA (42 U.S.C. §12131 et seq.) and his parents' rights under the ADA (Id. §1213I(2), 12182) and Section 504 (29 U.S.C. §794), which proximately caused his death.

4.      Mr. and Mrs. Hobart likewise bring state claims under TEX.CIV.PRAC.&REM. Code §71.0O2, 71.021 for Aaron's death.

5.      Mr. and Mrs. Hobart further allege that Estrada's actions resulted from his training by and the policies and customs of SPD, making the City of Stafford liable for Estrada's actions.

## II. JURISDICTION AND VENUE

6.      Plaintiffs bring this action under the ADA, Section 504, the U.S. Constitution, 42 U.S.C. §1983, and state law. Jurisdiction is based on 28 U.S.C. §§1331, 1343(a)(3)-(4).

7.      Jurisdiction over the Plaintiffs' TTCA claims arises under Tex.Civ.Prac.&Rem. Code §101.021, 101.025, 101.102 & 10 1.215. Estrada's misuse of tangible personal property caused Aaron's injuries and death. The City has received actual and constructive notice of these claims as required by Tex.Civ.Prac.&Rem. Code §101.101. Plaintiffs invoke the supplemental jurisdiction of the Court, pursuant to 28 U.S.C. §1367(a), to consider their state law claims.

8.      Venue is proper in this Court under 28 U.S.C. §1391(b)(1)-(2) because Defendants reside and have offices in this district and division.

## III. PARTIES

9.      Aaron Hobart was nineteen years old and resided with his parents in Stafford, Texas. He had a disability under the ADA and was handicapped under Section 504 because of his schizoaffective disorder.

10.     At all relevant times, Jesus Estrada acted as agent, servant, and employee of the City

under color of law. As such, he was responsible for upholding the laws of the United States and Texas. Mr. and Mrs. Hobart sue Estrada in his individual capacity for damages.

11.     At all relevant times, Bonny Krahn was Stafford Police Chief and acted as agent, servant, and employee of the City. As such, she was responsible for upholding the laws of the United States and Texas. Mr. and Mrs. Hobart sue Krahn in her individual capacity for damages and her official capacity for declaratory and injunctive relief.

12.     The City of Stafford operates and is responsible for the police department and, for this reason, is liable for the conduct of SPD officers.

13.     At all times, Defendants acted under color of law and pursuant to legal authority.

## IV. STATEMENT OF FACTS

14.     On February 18, 2009, Aaron experienced severe mental distress. He had been carefully tapering off his medications at the time of this event. Mrs. Hobart became quite concerned and contacted his treating psychiatrist, Dr. C. Scott Moreland. Dr. Moreland advised her to call 911 and request CIT assistance. If needed, CIT could transport Aaron to a mental hospital. CIT officers have special training in dealing with mental illnesses.

15.     Mrs. Hobart contacted 911, and the Greater Harris County (GHC) 9-1-1 Emergency Network automatically transferred Mrs. Hobart's telephone call to SPD. Mrs. Hobart said she needed a CIT officer. When asked, she explained that Aaron needed to be in a hospital and needed medication. Mrs. Hobart also explained that Aaron did not have a weapon and was not under the influence of any drug. Emergency services told Mrs. Hobart that the responder would be able to help transport Aaron to a hospital. Mrs. Hobart asked what the procedure to transport Aaron to a hospital would be, and emergency services told her that the responders would explain the procedure once they arrived.

16.    Rather than sending a CIT. however, SPD sent a regular patrol officer, Jesus Estrada, who lacked adequate training to accommodate Aaron's mental health crisis reasonably. When Estrada arrived at the Hobart home, Mrs. Hobart had previously informed the dispatch official that Aaron had a mental disability, was not armed, and had no type of weapon. She invited Estrada into the home.

17.    Estrada entered the home, and Aaron, upon hearing Estrada's voice and seeing him became more distraught and tried to leave the house. Aaron was unarmed and clad only in a t-shirt and shorts, with no shoes. He clearly had no weapons. Aaron tried to pass Estrada and caused physical contact with him, creating a confrontation situation. Aaron was waving his hands, which caused him to strike Officer Estrada.  However, there was no closed fist blow and the strike was not heavy or severe enough to cause a reasonable person to fear for their life.  IT was, in fact, more of an agitated waving of the arms than any kind of attack and no reasonable officer would have believed that Aaron posed a serious threat of injury.  Mrs. Hobart yelled at Estrada and Aaron to "stop!" the confrontation.

18.    As Estrada and Aaron stepped back from each other, Pam Hobart started to step between the two. Rather than using his non-lethal chemical spray or collapsible baton, if even a weapon was necessary, Estrada drew his firearm. At this time, Aaron's actions in no way suggested that he was reaching for a weapon or confronting Estrada. Mrs. Hobart continued to shout, "No, STOP."

19.    Estrada then shot Aaron in his right hip. The bullet tore through Aaron's body, threw him backwards, and spun him around. Aaron collapsed on the floor with his back facing Estrada, yet Estrada did not disengage. Rather, he proceeded to fire more shots into Aaron's body as Aaron lay on the floor of his home. Estrada fired a last bullet into Aaron's neck as his father,

Steve Hobart, entered the hallway. Estrada struck Aaron with five of the six fired shots, with the last one killing him.

20.     Mr. Hobart rushed to his son's side, applied pressure to the fatal neck wound, and attempted mouth-to-mouth resuscitation. At that point, a second officer entered the Hobart's home and assisted Mr. Hobart with the attempted resuscitation.

21.     Officer Estrada's use of excessive, unnecessary, and deadly force, the policies and customs of the City's and Chief Krahn's police department, and their failure and refusal to accommodate Aaron's mental illness caused his death.

22.     Estrada suffered no injuries from his altercation with the defenseless teenager. All Estrada could say after murdering Aaron was, "oh shit!" "NO" "Oh, my God!" "what is wrong with me?" and "he might die!" Immediately afterwards, Mrs. Hobart said, "I told them he did not have a weapon," at which time the officers present stopped recording the events.

23.     The City and its Police Chief have a duty to promulgate, implement, and enforce policies and procedures that adequately protect against the use of deadly force when unnecessary. Further, the City has a duty to adequately train, supervise, and discipline its law enforcement officers in their use of constitutionally permissible force. The City and its Police Chief breached this duty.

24.     The City and the Chief have a duty to train officers how to respond to mental health crises, execute mental health assessments, and communicate with mentally impaired individuals.

25.     When Estrada killed Aaron, the City had not performed an ADA or Section 504 self-evaluation plan to modify its police programs, services, and assistance calls to accommodate persons with mental disabilities.

26.    People with psychiatric disabilities are four times more likely to die in encounters with police than members of the general population.  The reason is due to lack of training.  The whole point of the mandated CIT training for police officers is to reduce the number of deaths of mentally ill persons in police encounters.

27.    Police encounters with mentally ill persons should be handled differently than police encounters with non mentally ill persons.  The tactics and techniques are substantially different than those routinely taught to officers to control conflicts.  The officers should be trained in the various different techniques.  Training of officers is supposed to be specifically geared toward dealing with the mentally ill differently than the rest of the population.  However, Officer Estrada was not trained in the manner in which he should handle mental health calls differently than non mental health calls.

28.    Estrada was not trained how not to escalate a mental health situation into violence.  He was not trained regarding the need not to be confrontational.  He was not trained that being less aggressive with a mentally ill person gives an officer more control.

29.    Chief Krahn has no criticisms of Estrada's conduct at the Hobarts. Krahn assigned the Asst. Chief to handle an investigation to make sure that the dept's policies were followed and the Asst. Chief assigned the investigation to Claborn.

30.    Sgt. Dustin Claborn was assigned to investigate the shooting on behalf of City of Stafford Police Department.  His purpose in investigating the Hobart shooting was to determine whether Officer Estrada's use of force was objectively reasonable and within the City's guidelines. The investigation of Officer Estrada's conduct did not go through the usual process as set out in the General Orders, but Claborn does not know why. The General Orders also say that the Chief will notify the complainant but Chief Krahn did not notify the Hobarts of the results of the

"investigation," and Claborn does not know why. The General Orders allow Chief Krahn to convene a review board but he didn't do so here and Claborn does not know why.

31.     Sgt. Claborn believes that Estrada's handling of the Hobart situation was "objectively reasonable." He has no criticisms of the way Estrada handled the situation. However, he has never interviewed Officer Estrada about the situation. All of Claborn's questions about Estrada's conduct were answered by the audio tape from Officer Estrada's vehicle and an interview by another detective.

32.     Even though he conducted the department's internal investigation and concluded that Officer Estrada's conduct was "objectively reasonable," Sgt. Claborn has no idea how close Aaron Hobart was to Estrada when Officer Estrada shot him the first time. While it would be important to Claborn to the determination as to whether Officer Estrada acted appropriately to know whether Officer Estrada could relate where everyone in the room was located. Sgt. Claborn is aware that Officer Estrada "blacked out" at some point, but he doesn't know whether he lost consciousness or to what extent he "blacked out." Claborn acknowledges that Aaron Hobart was barefoot in shorts and a t-shirt and weaponless. Estrada didn't know where the other people in the room were or how close the other officers were. Estrada cannot say how many times Hobart "hit" him. Claborn acknowledges that there could be a big difference in the objective reasonableness between Hobart just swinging his arms in a mentally ill fit and coming out in a boxing stance, and he doesn't even know which one applies here.

33.     The City's informal policy established through Claborn's review and approval of Estrada's conduct is that you don't have to know whether or not a lesser force could have been used in these circumstances in order to decide whether Officer Estrada acted objectively reasonably. An officer does not have to use the least amount of force necessary according to Sgt.

Claborn.    Subsequent ratification of Estrada's conduct establishes that what is objectively reasonable is going to vary from officer to officer:  "because what would be a minimum use of force may not be a realistic use or response to another officer."

34.      Claborn concluded that Estrada acted in accordance with his training in every respect of the Hobart incident.  It was determined that there was nothing  indicating need for additional or different training. As a result of Claborn's investigation, it was determined that there was no need for discipline of Officer Estrada and no need for further training.

35.      Stafford police officers are taught to "fire until the threat is ended." If you are going unconscious, shoot until the threat is ended. They have trained their officers that way for years. They teach them to shoot until the threat is ended. Most officers are going to revert to their training. Officer Estrada believed that Aaron Hobart had gotten up to come back after him and had grabbed him by the vest, so according to his training, he could have kept shooting. If he had done so, the person he would have shot would have been his fellow officer. If he had shot his fellow officer, Claborn would still have found that Estrada acted reasonably under the circumstances.  Even after watching the video, Claborn has no concerns at all about Estrada's ability to respond in a crisis situation.

36.      City of Stafford, through Claborn and Krahn acknowledge that if conduct is Okd by the chain of command, it sends a message that such conduct is acceptable.   Nobody with the City ever even reviewed the Hobart shooting with Estrada. After the shooting, nobody reviewed with Estrada his training on the levels of use of force. Nobody reviewed with Estrada his compliance with CIT training. Estrada believes that his Chief has sent him the message of approval of his conduct by keeping him on with no discipline.

37.     Chief Krahn ended up sending Estrada to subsequent "train the trainer" CIT sessions because Estrada would have the ability to very effectively train that in the future as a result of the event resulting in the death of Aaron Hobart. Officer Estrada now has the CIT Trainer certification and the City of Stafford has no problem with Officer Estrada instructing that course.

V. CAUSES OF ACTION

A. As to Officer Estrada

I. First Cause of Action
-----------------
Unconstitutional Use of Excessive and Deadly Force

38.     Defendant Estrada violated Aaron's right to be free from unreasonable seizure of his person when Estrada unjustifiably murdered Aaron. Estrada's actions were objectively unreasonable and violated Aaron's rights to life and the integrity of his person. The Fourth Amendment fully protects these rights.

39.     Numerous of Estrada's specific acts were objectively unreasonable. First, Estrada failed to obtain necessary information relating to the circumstances before encountering the Hobarts or entering the home.

40.     Secondly, Estrada failed to wait for the appropriate number of officers and/or backup before entering the home.  It was objectively unreasonable for a single officer with insufficient information concerning the circumstances to enter the home to encounter a mentally ill person. Estrada failed to assess the relevant circumstances before using excessive and deadly force against Aaron. An objective bystander would have observed that the young man was unarmed and failed to present any real threat to himself and those surrounding him.

41.     Thirdly, Estrada's use of excessive and deadly force did not relate to a proper or conscious assessment of danger. Estrada's choice was objectively unreasonable under the circumstances and unconstitutional.

42.     Fourthly, Estrada failed to respond to Aaron's behavior proportionately. The use of any force, especially deadly force, with a mentally ill teenager under these circumstances is objectively unreasonable and unconstitutional.

43.     Finally, after his deadly force incapacitated Aaron, but did not kill him, Estrada continued to unleash more bullets into the defenseless teenager. His first shot had knocked Aaron to the floor, yet Estrada continued to shoot at him at least five more times. Aaron never presented any danger to himself, others, or Estrada. He was obviously disoriented and unarmed.

### 2. Second Cause of Action
-----------------
### Assault and Battery

44.     Defendant Estrada's assault and battery against Aaron Hobart tragically killed him.

45.     By murdering Aaron in front of his mother and within the contemporaneous perception of his father, Estrada committed assault and battery against them.

46.     Steve and Pam Hobart have suffered extreme mental and emotional anguish as approximate result of Estrada's assault and battery.

### 3. Third Cause of Action
--------------
### Bystander Injury

47.     Pam Hobart was within twelve to twenty-four inches of Estrada when he shot and killed her son right in front of her eyes. Mrs. Hobart heard the bullets rip through her son's body and saw him collapsed on the floor in a pool of his own blood. Mrs. Hobart experienced extreme

mental distress and emotional anguish when she witnessed a police officer, whom she invited into the sanctity of her home, shoot and kill her youngest child.

48.     Steve Hobart, Aaron's father, heard the shots ring out as he raced out of the bedroom. When he entered the common area, he saw his youngest son lifeless in a pool of blood. He rushed to Aaron's side and tried to staunch the blood flow from his fatal neck wound. As Mr. Hobart turned Aaron onto his back, Mr. Hobart was himself covered in his own son's blood. Mr. Hobart has suffered extreme mental distress and emotional anguish as a result.

Punitive Damages

49.     Because Estrada acted willfully, intentionally, or with reckless and callous indifference to Aaron's civil rights, Plaintiffs seek punitive damages for his conduct.

B. As to the City of Stafford and Chief Krahn

1. First Cause of Action
---------------
Violations of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act

50.     The City of Stafford violated Title II of the ADA (42 U.S.C. §l2l3l-l2134, 12131(2), 12182) and Section 504 of the Rehabilitation Act (29 U.S.C. §794).

51.     Title II of the ADA applies to the City. Title II affirmatively requires that governmental agencies modify and accommodate their practices, policies, and procedures as necessary to avoid discriminating against individuals with disabilities.

52.     Further, the City of Stafford has been, and is, a recipient of federal funds. Thus, Stafford must comply with Section 504's mandate. Section 504 requires that federal money recipients reasonably accommodate persons with disabilities in their program activities and services and reasonably modify such services and programs to accomplish this purpose.

11

53.    The City is a public entity and its police department qualifies as a program and service

for purposes of Title II of the ADA and Section 504.

54.    The City violated Title H of the ADA and Section 504 by:

> a. Failing and refusing to reasonably modify and accommodate police department
> operations and services for Aaron Hobart, which would include avoiding the use
> of excessive and deadly force against mentally-ill individuals, ensuring safe
> transport to a mental health facility, and educating and training officers in the
> care of mentally-ill persons. The City and its police department made none of
> these modifications and accommodations;

> b. Failing and refusing to adopt a policy to protect the well-being of people like
> Aaron, persons with mental illnesses in a mental health crisis situation, thus
> facilitating Estrada's discriminatory treatment;

> c. Discriminating against Aaron, as a mentally-ill individual, in the provision of
> services by the City's police department in a mental health crisis situation, on the
> basis of his disability, by not accommodating his mental disability; and,

> d. Failing to conduct a self-evaluation plan under the ADA and Section 504, and
> then failing to modify its programs and services to accommodate the needs of
> persons with mental illness, such as Aaron, when called upon to provide service
> in crisis situations.

55.    Plaintiffs seek damages, as well as declaratory and injunctive relief, under the ADA and

Section 504.

## 2. Second Cause of Action
------------
Failure to Supervise and/or Failure to Train by City of Stafford and Chief Krahn

56.    In *City of Canton v. Harris*, 489 U.S. 378, 389—90, 109 S.Ct. 1197, 103 L.Ed.2d

412 (1989), it was determined that municipal liability for failure to supervise or train

could be shown in two ways:  First, a municipality shows deliberate indifference when it

fails to train/supervise its employees to handle a recurring situation that presents an

obvious potential for a constitutional violation and this failure to train/supervise results in

a constitutional violation.  Second, a municipality shows deliberate indifference if it fails

to provide further training/supervision after learning of a pattern of constitutional violations.

57. The City of Stafford and Police Chief Krahn failed to properly supervise Estrada. This failure to supervise was deliberately indifferent to the Hobarts' constitutional rights because proper training and/or supervision would ensure that Aaron would be free from Estrada's unlawful seizure of his person and would be safe and secure from undue, unreasonable, excessive, and deadly force.

58. Defendants had a constitutional duty to supervise and/or train Estrada and protect Aaron from Estrada's wrongful acts, omissions, and unconstitutional use of force.

59. Further, the City's supervisory policies are unconstitutional in the following areas:

    a. Improper responses to requests for an unavailable police service, such as requests for a crisis intervention team officer;

    b. Inappropriate communications of crisis intervention requests for a mentally-ill individual;

    c. Not dispatching appropriate personnel to respond to mental health calls;

    d. Improper use of non-lethal weapons, such as batons and chemical spray;

    e. Improper use of a firearm;

    f. Improper use of non-lethal self-defense measures;

    g. Inadequate management and detention of persons with mental impairments;

    h. Excessive use of force and use of deadly force;

    i. Deficient use of crisis intervention techniques;

    j. Inappropriate use of supplemental restraint measures; and,

    k. No providing proper and adequate information for first response officers.

60.    The    actions    and    omissions    of    Estrada's    supervisors,    including    Krahn, constituted supervisory encouragement of the use of excessive and deadly force. This grossly inadequate supervision resulted from, and was caused by, Defendants' conscious and deliberate indifference to the rights of individuals and of the Hobarts not be subjected to constitutional deprivations.

61.    The City's and Krahn's constitutionally-flawed supervision of Estrada deprived the Hobarts of their constitutional rights and proximately caused Aaron's injuries and death.

62.    The City's and Chief Krahn's law enforcement training policies are

unconstitutional in that they fail to provide for:

   a. Proper communication of crisis intervention requests for mentally-ill  persons;

   b. i Proper responses to requests for an unavailable police service, such as  requests  for  a crisis intervention team officer;

   c. Dispatching appropriate personnel to respond to mental health calls;

   d. Appropriate and adequate information for first response officers.

   e. Proper use of non-lethal weapons, such as batons and chemical spray;

   f. Proper use of a firearm;

   g. Proper use of non-lethal, self-defense measures;

   h. Appropriate management and detention of persons with mental   impairments;

   i. Limiting excessive use of force and use of deadly force;

   j. Proper use of crisis intervention techniques; and,

   k. Appropriate use of supplemental restraints.

63.     Additionally, Officer Estrada's field training clearly indicated that he was deficient in the areas necessary to interact with the mentally ill, both from the lack of relevant training and the lack of response to Officer Estrada's demonstrated deficiencies in the field.

64.     Improper and inadequate law enforcement training in detention, proper use of weapons, proper interrogation and arrest procedures, and the use of excessive and deadly force was deliberately indifferent toward the Hobarts' their constitutional rights and deprived them of those rights.

65.     The City failed to train and/or supervise its officers to handle a recurring situation with obvious potential for a constitutional violation.  The City knew and acknowledged that there would be recurring situations involving emergency calls relating to encounters with mentally ill citizens.  The City knew and acknowledged the potential for constitutional violations in such encounters.  Yet the City failed to train its officers to handle such situations and specifically failed to train Officer Estrada to handle such encounters, which was the direct and proximate cause of the death of Aaron Hobart.  Furthermore, the City's chain of command and supervision failed to meet its supervisory obligations to ensure that Officer Estrada was prepared to encounter mentally ill citizens.

66.     Further, the City knew of a pattern of ongoing constitutional violations of the rights of the mentally ill in Fort Bend County.  A Community Plan was developed that acknowledged the ongoing pattern of conduct that constituted constitutional violations of the mentally ill citizens of Fort Bend County.  However, in response to the acknowledged need, there was no action on the part of the City to adopt or create policies or procedures to address the known constitutional deficiencies.  Chief Krahn acknowledged that the Community Plan was simply treated as an opportunity for the City to obtain additional funding.  The City demonstrated deliberate and

knowing indifference to the acknowledged pattern of violations by using it as an opportunity for funding without actually providing any additional training or supervision in the deficient areas.

67.     Further, the City knew and acknowledged the potential for constitutional violations with respect to lack of training in firearms and appropriate use of force.  Yet the City failed to train its officers with respect to appropriate use of firearms and deadly force in citizen encounters. Specifically, the City failed to train any of its officers regarding control of weapons, muzzle control of firearms, appropriate discharge of firearms and/or use of deadly force.  There was a complete failure by the City to provide any training regarding muzzle control or weapon control necessary to such encounters and that would have prevented the death of Aaron Hobart.

68.     The City was aware specifically of a pattern of conduct on the part of Officer Estrada of constitutional violations from conduct evidencing lack of judgment, lack of common sense, lack of safe practices.  Following a pattern of conduct on the part of Officer Estrada reflecting constitutional violations, The City failed to give proper and appropriate training or supervision. In fact, the City provided no responsive training to the pattern of conduct of Officer Estrada. During his field training, Officer Estrada was specifically found by the City to repeatedly exhibit conduct involving constitutional violations and instead of providing appropriate responsive training, the City instructed Officer Estrada to increase his use of deadly force.

69.     There exists both *City of Canton* bases for failure to train/supervise liability: a) a recurring situation that presents an obvious potential for a constitutional violation and this failure to train/supervise results in a constitutional violation; and b) a showing of deliberate indifference by failing to provide further training/supervision after learning of a pattern of constitutional violations.  As a direct result of these constitutional violations, Aaron suffered severe injuries and death.

70.     Chief Krahn is individually liable because he had knowledge of a pattern of constitutional violations of the rights of mentally ill citizens and he was deliberately indifferent to such violations.  Chief Krahn's conduct was objectively unreasonable and violated clearly established constitutional rights of Aaron Hobart.  Krahn was aware prior to the death of Aaron Hobart of a pattern of constitutional violations of mentally ill citizens by police in Stafford, Texas.  He received information from, and participated in, a study encompassing the City of Stafford and culminating in written findings and recommendations relating to interactions with the mentally ill.  He was aware of the need for specific policies and procedures to address police interaction with mentally ill.   Yet even in light of specific knowledge, Krahn exhibited deliberate indifference to such need and failed to implement the necessary procedures and practices for such encounters.

71.     At the time of his death, Aaron Hobart had a clearly established right to be free from excessive force and to be treated as a mentally ill citizen.  It is clear that police conduct violating those rights constituted constitutional violations and that Chief Krahn should be aware of such rights at the time of Aaron Hobart's death.  Krahn's violation of such clearly established rights violate the constitution and create individual liability on the part of Chief Krahn.

3. Third Cause of Action
---------------
Unlawful Policy and Custom of City of Stafford

72.     Chief of Police Krahn is an official policymaker.[1] Causing the improper transfer of critical information to first responders, improper and inaccurate responses to requests for a CIT officer,  and  unnecessary  weapon  use  on  mentally-ill  arrestees  and  detainees  forms  an

---

[1] Stafford, Tex. Code of Ordinances cli. 66, art. 2, §66-24 (1992).

official municipal policy. Further, this conduct arises to SPD custom because Krahn has tolerated and acquiesced in such behavior. The policy and custom includes the use of deadly force against mentally-ill arrestees and detainees under Krahn's care. Such policy and custom violates Fourth arid Fourteenth Amendment protections, as to Aaron and his parents, respectively.

73.     Chief Krahn had policymaking authority both explicitly through the City's written ordinances and implicitly as a result of the delegation of authority and the customs and practices of the City of Stafford City Council.  Chief Krahn had authority to establish binding city policy respecting matters relating to the police department and to adjust that policy for changing circumstances.  Such authority is reflected in the City's ordinances delegating all policymaking authority for the police department to Chief Krahn.  Furthermore, it is reflected in the custom and practice of Chief Krahn establishing all practices of the police department, including all relevant General Orders relating to police operations, which are not even reviewed by the Stafford City Council.

74.     Emergency services followed policy and custom when responding to Mrs. Hobart's call. During this response, emergency services failed to inform Mrs. Hobart that Stafford lacked a crisis intervention team or CIT specialist. Emergency services' failure to dispatch information on Aaron's mental health condition and of the need for a crisis intervention specialist also followed Stafford's policy and custom. Additionally, the dispatch official's failure to code Mrs. Hobart's call as a CIT call or to dispatch properly trained CIT officers was according to Stafford policy and custom. Each of these policies and customs deprived the Hobarts of constitutional rights. This was not a single isolated incident, but an admittedly established pattern of practice on the part of the City.  Chief Krahn was aware of the necessity for a CIT team and CIT response to

18

mental health calls.  He knew that a failure to provide such was likely to result in constitutional violations, yet he knowingly established a response protocol that did not provide for CIT response.

75.     The police department's response to the call for help from the Hobarts followed the City's established policies and practices in terms of failing to obtain appropriate information relating to the circumstances surrounding the need for services, failing to provide thorough information to the officers dispatched, failing to require Officer Estrada to wait for additional officers before entering the residence, failing to require Officer Estrada to implement CIT procedures on this call.  The City had a long pattern and practice of handling mental health calls in the same manner.  The City admits that the procedures followed by Officer Estrada were longstanding and established procedures.  This was not a one time occurrence, but part of a pattern of conduct which caused the deprivation of Aaron Hobart's constitutional rights.  Chief Krahn and/or relevant policymakers had actual and/or constructive knowledge of these policies and practices.

76.     Estrada's unreasonable and excessive use of force followed Stafford's policies, procedures, practices, and customs. In fact, the City of Stafford's practices and customs allowed for and even directed an excessive use of force response to the Hobart circumstances.   The practice and custom at the City of Stafford when dealing with a mentally ill citizen who is swinging his arms wildly with no weapon and no access to a weapon is to use deadly force.  Such a custom and practice is unconstitutional.  Such unconstitutional practice was the direct and proximate cause of the death of Aaron Hobart.    At all relevant times, Estrada followed the policies, procedures, customs and practices under color of law, put forth by the City and Chief Krahn.

77.    The City's deficient custom, policies, procedures, and practices for emergency communications, transferring information within the police department, dispatching an inappropriate officer, and the improper and unreasonable use of force consciously disregarded and were deliberately indifferent to the right to be free from excessive and deadly force.

78.    The deficient customs, policies, and practices are a direct and proximate cause of the unlawful use of excessive and deadly force against Aaron. These deficient policies, procedures, practices, and custom proximately caused the unconstitutional use of force against Aaron. As a direct result of these constitutional violations, Aaron suffered severe injuries and death.

79.    The Supreme Court has identified a municipal "policy," even where the policymaker has failed to act affirmatively at all, so long as the need to take some action to control the agents of the government "is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] ... can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989).  The policymaker's toleration of the subordinates' behavior establishes a policy-in-practice just as readily attributable to the municipality as the one-act policy-in-practice described in [City of Canton]. Such a policy choice may be inferred even without a pattern of acts by subordinate officers, so long as the need for action by the policymaker is so obvious that the failure to act rises to deliberate indifference." *Id.*, at 390, n. 10, 109 S.Ct., at 1205, n. 10.  In this case, the need for action by Chief Krahn is so obvious that the failure to act rises to the level of deliberate indifference.

80.   The City's police department has an informal custom, practice or policy regarding the use of deadly force, which includes, but is not limited to:

a. Allowing, encouraging, requiring, and training officers to use deadly weapons in lieu of less harmful techniques, including non-lethal physical restraints or proper detention techniques;

b. Allowing, encouraging, requiring, and training officers to use deadly force as a first resort, rather than training them to assess the situation and use only necessary force;

c. Allowing, encouraging, requiring, and training officers to confront mental health detainees in such a way as to lead to the officer's use of excessive force;

d. Failing to establish policies to insure that CIT requests are communicated properly within the department and to patrol officers with adequate training;

e. Failing to establish the necessary policies for officers responding to service calls involving mentally impaired individuals;

f. Failing to establish policies necessary to dispatch CIT officers for calls involving mentally impaired individuals; and,

g. Failing to establish policies to separate service calls for persons in mental health crisis situations from regular calls.

81.   As part of these policies, customs, and practices, the City trains officers to assess situations according to an "action/reaction" motive. The City trains officers and expects them to use excessive or deadly force before a person has a chance to act. Consequently, the City's officers, including Estrada, rely on excessive and deadly force as their primary enforcement tool.

82.     The Chief's toleration of his subordinate's behavior establishes a policy-in-practice just as readily attributable to the municipality as the one-act policy-in-practice described in *City of Canton*.  Such a policy choice may be inferred even without a pattern of acts by subordinate officers, so long as the need for action by the policymaker is so obvious that the failure to act rises to deliberate indifference.

83.     The governing body of the City of Stafford Police Department, whether the court believes it to be county commissioners or the chain of command within the precinct, failed to provide policies or procedures for mental health officers to interact with mental health patients and failed to provide policies or procedures for interaction with mentally ill citizens.

84.     Additionally, the practice in the Precinct One division of treating mental health encounters the same as criminal arrests even though the CIT provided by the state directed otherwise evidenced a knowing and deliberate indifference to the rights of the county's citizens.

4. Fourth Cause of Action
---------------
Ratification

85.      Estrada did not use appropriate CIT procedures in dealing with the Hobarts.  He escalated the situation rather than de-escalating it, he failed to wait for additional officers, he initiated confrontation, failed to obtain additional necessary information and failed to implement proper CIT procedures in the situation.  City policymakers ratified and expressly approved of such conduct on the part of Officer Estrada, determining that it was in accordance with City procedures, customs and practices.  In fact, Estrada was subsequently placed in a position to train other officers in CIT procedures.  Such ratification either caused the death of Aaron Hobart because policymaker approval of a failure to implement such procedures generally was known

prior to the encounter or, alternatively, direct causation is not an element of after the fact ratification.[2]

86.     Additionally, City policymakers ratified and expressly approved of Estrada's use of force in his encounter with Aaron Hobart.  The use of force was clearly excessive and unconstitutional. Estrada began firing wildly even though a reasonable officer in his situation would not have believed that he or others were at risk of serious harm.  Additionally, he failed to consider bystanders, failed to consider lesser force options, failed to assess when any threat had ended and used force excessive to the situation.  These policies and practices of the City were ratified by City policymakers and communicated to the officers as accepted practice.  Additionally, the City expressly approved of Estrada's use of excessive force in this specific situation.  Further, the City's informal policy established through Claborn's and Krahn's review and approval of Estrada's conduct is that you don't have to know whether or not a lesser force could have been used in these circumstances in order to decide whether Officer Estrada acted objectively reasonably. An officer does not have to use the least amount of force necessary according to the City.  All of Estrada's conduct was reviewed in detail by the City through an investigation and was specifically approved by the chain of command, including the head of training who investigated and Chief Krahn.  The City affirmatively states that Officer Estrada's use of force was in accordance with its customs and practices and that Estrada was subject to no discipline. Rather, he was put in charge of training other officers for similar situations.   Such ratification either caused the death of Aaron Hobart because policymaker approval of such use of force generally was known prior to the encounter or, alternatively, direct causation is not an element of after the fact ratification.

---

[2] Plaintiffs note that the Court has granted summary judgment on the issue of failure to train with respect to CIT procedures but asserts that Ratification presents a different standard of analysis.

87.     The City policymaker(s), failed to provide policies or procedures for mental health officers to interact with mental health patients and failed to provide policies or procedures for restraint of mental health patients.

88.     Additionally, the practice at the City of Stafford of treating mental health encounters the same as criminal arrests even though the CIT provided by the state directed otherwise evidenced a knowing and deliberate indifference to the rights of the county's citizens.

89.     Finally, the practice at the City of Stafford of using deadly force on mental health calls when such were known to be dangerous and had even been banned by the International Association of Chiefs of Police evidenced a knowing and deliberate indifference to the rights of the county's citizens.

90.     The City ratified Krahn's and Estrada's conduct by approving their decisions and actions. As a result, the City is responsible for Krahn's and Estrada's constitutional violations.

Punitive Damages

91.     Because Chief Krahn acted willfully, intentionally, or with reckless and callous indifference to Aaron's civil rights, Plaintiffs seek punitive damages for her conduct.

C. As to All Defendants

1. First Cause of Action
---------------
Parent-Child Relationship - Substantive Due Process

92.     Defendants violated Aaron's and his parents' substantive due process rights, guaranteed by the Fourteenth Amendment, in that they adversely affected and destroyed a parent- child liberty interest in family relationship and society.

2. Second Cause of Action
---------------
Survival and Wrongful Death Claims

93.     Pursuant to Tex.Civ.Prac.&Rem. Code §71.002, 71.021, Texas case and common law, and the Texas Tort Claims Act, Stafford is liable for its employee's actions, including its agents and officers.

94.     On the occasion in question, Officer Estrada used personal property, a lethal weapon, in a negligent manner and thus, the City is liable for the injuries sustained under the Texas Tort Claims Act.

95.     Mr. and Mrs. Hobart may recover individually for their severe mental anguish and emotional distress, and that of their son, caused by Defendants' gross negligence. Stafford negligently failed to train and supervise Estrada. Plaintiffs suffered extreme distress, anxiety, shock, and mental anguish because of Aaron's death.

96.     Mr. and Mrs. Hobart may recover damages from the City for Aaron's wrongful death because its employee caused Aaron's death through wrongful acts, neglect, carelessness, gross negligence, and wanton disregard for Aaron's rights.

97.     The City is liable for Aaron's wrongful death because it owed Plaintiffs and their son a duty under the Federal Constitution, the ADA, Section 504, and Texas law - all as set out above. The City breached this duty and that breach proximately caused Plaintiffs' damages.

98.     Plaintiffs sue for actual damages, including, but not limited to, their pain, mental anguish, loss of companionship and society, loss of inheritance, and that of their son, as well as pre-judgment and post-judgment interest and costs.

99.     As representatives of Aaron's estate, Steve and Pam Hobart assert a survival claim against Defendants for Aaron's claims under federal and state law and damages, including, but not limited to, his mental anguish because of Defendants' wrongful acts, his funeral expenses, pre-judgment and post-judgment interest as allowed by law and costs.

DECLARATORY AND INJUNCTIVE RELIEF

100.    Mr. and Mrs. Hobart seek declaratory relief that Defendants violated Aaron's and their rights under the U.S. Constitution, Title II of the ADA, Section 504 of the Rehabilitation Act, and Texas state law, as described above.

101.    Mr. arid Mrs. Hobart seek to prevent Defendants from continuing their current policies, customs and procedures related to mental health service calls, as described above.

ATTORNEYS' FEES

102.    Mr. and Mrs. Hobart are entitled to recover attorneys' fees, costs, litigation expenses, and expert fees, as allowed, pursuant to 42 U.S.C. §1988, 12205.

JOINT AND SEVERAL LIABILTY

103.    All Defendants are jointly and severally liable.

CONCLUSION AND PRAYER

THEREFORE, Mr. and Mrs. Hobart pray for judgment against all Defendants for actual and compensatory damages, declaratory relief, injunctive relief, and for statutory attorneys' fees, costs, and expenses. They pray for punitive damages against Defendants Estrada and Krahn. Finally, they seek all other additional relief as the Court deems just and proper.


Respectfully submitted,


 s/Susan E. Hutchison
Susan E.  Hutchison
Texas Bar No. 10354100
hutch@seeyouincourt.com

Kern Lewis
Texas Bar No. 12295320
lewis@seeyouincourt.com

Wes Dauphinot
Texas Bar No. 00793584
wes@seeyouincourt.com

HUTCHISON, LEWIS & DAUPHINOT, P.C.
611 S. Main Street, Suite 700
Grapevine, Texas 76051
Phone:  817-336-5533
Fax:  817-336-9005

ATTORNEYS FOR PLAINTIFFS


**<u>CERTIFICATE OF SERVICE</u>**

      This is to certify that on this 2nd day of May, 2012, a true and correct copy of the above and foregoing document was served on the following attorney of record via the court's electronic service:

William S. Helfand
Norman Giles
Chamberlain, Hrdlicka, White, Williams & Martin
1200 Smith, Ste. 1400
Houston, TX   77002


                    <u>s/Susan E. Hutchison</u>
                    Susan E. Hutchison